IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HOUSTON REFINING LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. H-07-2560 |
| | § | |
| UNITED STEEL, PAPER AND FORESTRY, | § | |
| RUBBER, MANUFACTURING, ENERGY, | § | |
| ALLIED INDUSTRIAL AND SERVICE | § | |
| WORKERS INTERNATIONAL UNION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Docket Entry Nos. 21, 22), Defendant's Motion for Summary Judgment (Docket Entry No. 20), and the responses filed thereto. The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **DENIES** Plaintiff's motion and **GRANTS** Defendant's motion.

### I.  Case Background

Houston Refining, L.P. ("Plaintiff" or "Houston Refining")[2] brought this action against United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("Defendant" or "Union"), seeking an

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry Nos. 17, 18, 19.

[2]    Plaintiff is the legal successor to Lyondell-Citgo LP.  See Houston Refining's Complaint, Docket Entry No. 1, p. 1.

order to set aside and vacate an arbitration award.[3]  Union filed a complaint against Houston Refining seeking enforcement of the arbitration decision.[4]  Upon Houston Refining's motion, the court consolidated the two actions.[5]  Houston Refining, a Delaware corporation, is an operator of refining facilities located in Houston, Texas.[6]  Union is an unincorporated labor organization representing employees at Houston Refining's facility in Houston.[7]

The arbitration award underlying this case concerns the termination of Michael Dimmick, a refinery operator for Houston Refining.[8]  Dimmick was terminated for "excessive absences" in violation of Houston Refining's Attendance Improvement Plan ("AIP"), which was in effect at the time of Dimmick's absences.[9] The AIP was "developed to improve the attendance of those [Houston Refining] employees that are chronically absent from the workplace."[10]  The program consists of "a four-step system under

---

[3]    Id.

[4]    Union's Complaint, Docket Entry No. 12, p. 2.

[5]    See Motion to Consolidate, Docket Entry No. 4; Order to Consolidate Cases, Docket Entry No. 10.

[6]    Houston Refining's Complaint, Docket Entry No. 1, p. 2.

[7]    Id. at 2; accord Union's Original Answer, Docket Entry No. 11, p. 1.

[8]    Houston Refining's Complaint, Docket Entry No. 1, p. 4.

[9]    See id.; Ex. B, Attendance Improvement Program, p. 1; Ex. D, Opinion and Award, p. 3; see also Union's Original Answer, Docket Entry No. 11, p. 2.

[10]    Houston Refining's Complaint, Docket Entry No. 1, Ex. B, Attendance Improvement Program, p. 1-2.

which represented employees working for [Houston Refining] advance through the steps as they accumulate absences addressed by the AIP."[11]   The fourth step in the program is termination.[12]

On November 28, 2005, Dimmick notified Houston Refining that he would be absent from work due to pain resulting from back surgery that he underwent in 2004.[13]  He was absent from work from November 28 to December 4, 2005.[14]  In response, Houston Refining sent Dimmick a letter, dated November 28, 2005, notifying him of the paperwork necessary for his absence to be considered leave under the Family Medical and Leave Act ("FMLA") and not counted against him under the AIP.[15]  The letter included, inter alia, the following instructions:

> You may have a medical condition that falls within the guidelines of the Family Medical and Leave Act (FMLA). If you believe your absence may qualify for FMLA, within fifteen (15) calendar days of receipt of receipt[sic] of the forms, you must apply for FMLA by completing and signing the 'Request for Leave' form, and having your treating physician complete and sign the 'Certification of Health Care Provider' form.  Return the completed and

---

[11]    See Houston Refining's Complaint, Docket Entry No. 1, p. 4; Ex. B, Attendance Improvement Program, p. 2; accord Union's Original Answer, Docket Entry No. 11, p. 2.

[12]    Houston Refining's Complaint, Docket Entry No. 1, Ex. B, Attendance Improvement Program, p. 2.

[13]    Houston Refining's Complaint, Docket Entry No. 1, p. 4.  Dimmick underwent significant back surgery in 2004.  He was off work for approximately seventeen weeks during the time of the surgery and recovery.  Houston Refining Complaint, Docket Entry No. 1, p. 6; Ex. D, Opinion and Award, p. 9.

[14]    Id.

[15]    Id. at 5; Ex. C, Letter from Connie Christa; accord Union's Original Answer, Docket Entry No. 11, p. 3.

signed forms to Health & Wellness Nurse.

If you do not submit the completed 'Request for Leave'
and 'Certification of Health Care Provider' forms you
will not receive FMLA leave, and the absence will be
charged in the Attendance Improvement Program.[16]

When Dimmick returned to work on December 5, 2005, he provided two of the required medical leave documents, but not the Certification of Health Care Provider.[17]  Two days prior to the expiration of the fifteen-day deadline explained in the November 28 letter, Houston Refining contacted Dimmick to inform him that it had yet to receive the certification from his doctor.[18]  An incomplete Certification of Health Care Provider form was submitted to Houston Refining on December 20, 2005, six days after the deadline.[19]  The completed certification was received on December 28, 2005, fourteen days after the deadline.[20]

Because Dimmick did not provide the FMLA paperwork within the fifteen days, Houston Refining denied Dimmick FMLA leave for his November 28 to December 4, 2005 absence.[21]  As a result, Dimmick was

---

[16]    Houston Refining Complaint, Docket Entry No. 1, Ex. C, Letter from Connie Christa; see also Union's Original Answer, Docket Entry No. 11, p. 3.

[17]    Houston Refining Complaint, Docket Entry No. 1, p. 6; Ex. D, Opinion and Award, p. 10.

[18]    Houston Refining's Complaint, Docket Entry No. 1, p. 5.

[19]    Id. at 6; see also Union's Original Answer, Docket Entry No. 11, p. 3.

[20]    Id.

[21]    Houston Refining's Complaint, Docket Entry No. 1, p. 5; Union's Original Answer, Docket Entry No. 11, p. 4.

terminated on February 24, 2006.[22]   Houston Refining terminated Dimmick's employment "for excessive absences in violation of the AIP."[23]

Union filed a grievance regarding Houston Refining's decision to terminate Dimmick under a Collective Bargaining Agreement ("CBA") between Union and Houston Refining.[24]   The grievance was denied by Houston Refining and appealed to arbitration pursuant to the procedures set forth in the CBA.[25]   The arbitrator, Charles R. Greer ("Arbitrator"), held a hearing on April 13, 2007, and issued his decision on June 21, 2007.[26]

The issue before the Arbitrator was whether Dimmick was discharged for "good and sufficient cause,"[27] and, if not, the Arbitrator was to determine the "appropriate remedy."[28]   The Arbitrator ultimately found that Houston Refining lacked good and

---

[22]    Id.

[23]    Houston Refining's Complaint, Docket Entry No. 1, Ex. D, Opinion and Award, p. 3.

[24]    Houston Refining's Complaint, Docket Entry No. 1, p. 6; Union's Complaint, Docket Entry No. 12, p. 2.   The CBA was initially between Union and Houston Refining's legal predecessor, Lyondell-Citgo Refining.

[25]    See Houston Refining Complaint, Docket Entry No. 1, p. 3, 6; Ex. A, Articles of Agreement, p. 1; Union's Complaint, Docket Entry No. 12, p. 2.

[26]    See Houston Refining Complaint, Docket Entry No. 1, p. 6; Ex. D, Opinion and Award.

[27]    Article 37 of the CBA indicates that Houston Refining possesses the sole right to "hire, suspend or discharge for good and sufficient cause."   Id. at Ex. A, Articles of Agreement, p. 45.

[28]    Houston Refining Complaint, Docket Entry No. 1, Ex. D, Opinion and Award, p. 5.

sufficient cause for terminating Dimmick and directed the company
to convert Dimmick's termination into a three-day suspension.[29]
Houston Refining was instructed to reinstate Dimmick in his
previous position and provide him back pay, seniority, and all
benefits to which he was entitled during the period he was
terminated (less the three-day suspension).[30]

The Arbitrator's opinion was based on a finding that the
fifteen-day time limit applied by Houston Refining under the FMLA
did not meet the test of reasonableness to establish a just cause
for termination.[31] He explained that Houston Refining's application
of the time limit was unreasonable because it "did not allow for
delays on the part of the Grievant's physician in submitting the
medical certification that were beyond the control of the
Grievant."[32] The Arbitrator indicated that Dimmick had acted in
good faith and made diligent efforts to provide the required
certification.[33] By denying additional time for submission of the
required documentation, the Arbitrator opined that Houston Refining
had denied FMLA leave to which Dimmick would have been entitled and

---

[29]   Id. at 12.

[30]   Id.

[31]   Id. at 11.

[32]   Id.

[33]   Id.

had unfairly added points and absences to his AIP record.[34]  Despite
the Arbitrator's opinion that Dimmick "could have been more active
in encouraging his physician's office to submit the certification
form in a timely manner," the Arbitrator concluded that the delays
on the part of Dimmick's physician were "beyond [his] control."[35]

After the Arbitrator's opinion was issued, Houston Refining
filed a complaint asking this court to set aside the final and
binding decision of the Arbitrator.  Union filed a counterclaim
seeking enforcement of the entirety of the Arbitrator's decision.

The parties do not dispute the material facts of this case.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that
no genuine dispute exists regarding any material fact and the
moving party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);
Brown v. City of Houston, 337 F.3d 539, 540-41 (5th Cir. 2003).  A
material fact is a fact that is identified by applicable
substantive law as critical to the outcome of the suit.  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet
Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th
Cir. 2001).  To be genuine, the dispute regarding a material fact
must be supported by evidence such that a reasonable jury could

---

[34]     Id.

[35]     Id.

7

resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

The nonmoving party must show more than "some metaphysical doubt as to the material facts."  <u>Meinecke v. H & R Block</u>, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only

8

a scintilla of evidence will not carry this burden.  <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

## III.  Analysis

Judicial review of arbitration decisions arising from the terms of a CBA is "narrowly limited." <u>Resolution Performance Products, LLC v. Paper Allied Indus. Chem. & Energy Workers Int'l Union, Local 4-1201</u>, 480 F.3d 760, 764 (5th Cir. 2007).  Courts are to give great deference to arbitration awards and all doubts must be resolved in favor of the award.  <u>See</u> <u>id.</u>; <u>Beaird Indus., Inc. v. Local 2297, Int'l Union</u>, 404 F.3d 942, 944 (5th Cir. 2005).

Courts are not authorized to review an arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement.  <u>Int'l Chem. Workers Union v. Columbian Chem. Co.</u>, 331 F.3d 491, 494 (5th Cir. 2003).  A court must affirm an award, even in a situation where the court would have interpreted the contract differently. <u>Resolution Performance Products, LLC</u>, 480 F.3d at 765; <u>see also Int'l Chem. Workers Union</u>, 331 F.3d at 495 ("Where there is a CBA which is governed by the [Labor Management Relations Act], courts

9

have no business overruling the Arbitrator because their interpretation of the contract is different from the arbitrator's.")(internal quotations omitted).

This case involves arbitration under a CBA, therefore, the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, applies. See Int'l Chem. Workers Union, 331 F.3d at 494 ("The LMRA applies to CBAs and the FAA [Federal Arbitration Act] applies to individual arbitration agreements."). However, when reviewing an arbitration award in a case arising under the LMRA, courts may still rely on the FAA for guidance. Id; c.f. Brabham v. A.G. Edwards & Sons, Inc., 376 F.3d 377, 384 (5th Cir. 2004)("[R]eview under the LMRA and review under the FAA, while often similar, are not interchangeable."). Under the FAA, a district court may vacate an award only if: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers.[36]  9 U.S.C. § 10(a); Int'l Chem. Workers Union, 331 F.3d at 495.  In addition, the Fifth Circuit recognizes two nonstatutory bases for vacatur of an

---

[36]     The Brabham court clarified that, what some courts refer to as, the "essence test" is not a separate nonstatutory ground for vacatur, but is part of the "exceeded his powers" basis of vacatur under the FAA.  376 F.3d at 382-83. The essence test states: "To draw its essence from the contract 'the award must, in some logical way, be derived from the wording or purpose of the contract.'" Kergosien v. Ocean Energy, Inc., 390 F.3d 346, 353 (5th Cir. 2004)(quoting Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1325 (5th Cir. 1994).

arbitration award: (1) manifest disregard of the law; and (2) contrary to public policy.  See Kergosien v. Ocean Energy, Inc., 390 F.3d 346, 353 (5th Cir. 2004).  Arbitrariness and capriciousness is not an accepted ground for vacator in FAA cases in the Fifth Circuit, but has been recognized in cases arising from the terms of a CBA.  See Brabham, 376 F.3d at 382-83.

Here, Houston Refining urges the court to set aside the arbitration award based on allegations that: (1) the Arbitrator exceeded his authority under the parties' CBA; (2) the arbitration award is arbitrary and capricious; (3) the Arbitrator exhibited manifest disregard of the law; and (4) the arbitration award violates public policy.

**A.  Scope of Authority**

An arbitration award must be affirmed "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Beaird Indus., Inc., 404 F.3d at 944 (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)).  "As long as the arbitrator's decision 'draws its essence from the collective bargaining agreement' and the arbitrator is not fashioning its own brand of industrial injustice, the award cannot be set aside." Weber Aircraft, Inc. v. Gen. Warehousemen & Helpers Union, Local 767, 253 F.3d 821, 824 (5th Cir. 2001) (quoting Misco, 484 U.S. at 38; Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1324 (5th Cir.

11

1994).

The Arbitrator's authority is limited by the terms of the CBA and the issues presented to him.  Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Indep. Truck Drivers Union, Local No. 1, 611 F.2d 580, 583 (5th Cir. 1980); see also Int'l Chem. Workers Union, 331 F.3d at 495.  The arbitration award must have a basis that is "at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement." Executone Info. Sys., Inc., 26 F.3d at 1325 (internal quotations omitted); see also Beaird Indus., Inc., 404 F.3d at 947.  In making his decision, an arbitrator may look beyond the written CBA if the agreement is ambiguous or silent upon a specific issue.  Beaird Industries, Inc., 404 F.3d at 946.

In its motion for summary judgment, Houston Refining contends that the Arbitrator exceeded his authority by: (1) recalculating Dimmick's AIP points; and (2) adjudicating Dimmick's FMLA rights. Houston Refining interprets the issue before the Arbitrator (whether Dimmick was discharged for "good and sufficient cause") to have been a determination of whether excessive absences provided good and sufficient cause to support Dimmick's termination, therefore making the Arbitrator's evaluation of Houston Refining's practice of requiring medical certification under the FMLA outside the scope of his authority.  Houston Refining asserts that the Arbitrator relied on the FMLA as the basis for Dimmick's

reinstatement, which was something the Arbitrator was not authorized to do without any incorporation of the FMLA in the CBA.

Union maintains that the Arbitrator did not exceed his authority and requests that the Arbitrator's award and remedy be affirmed.  Union asserts that the Arbitrator's award draws its essence from the CBA.  Union contends that it was permissible for the Arbitrator to look to the FMLA as long as the CBA was the foundation of the award.  Union also asserts that the parties expressly authorized the Arbitrator to determine the appropriate remedy; thus, the Arbitrator did not exceed his authority in his award determination.

Article 30 of the CBA sets forth the grievance and arbitration procedure under the agreement.[37]  If a grievance is not settled or withdrawn, Union has the right to request arbitration of the grievance.  In such a case: "The arbitrator shall consider only employee or Workman's Committee grievances arising under the application of the currently existing Agreement and wage and classification disputes . . . ."[38]  Article 37 sets forth Houston Refining's management rights:

> The Union recognizes that operation of the Company's
> facilities and the direction of the working forces,
> including the right to hire, suspend or discharge for
> good and sufficient cause . . . , the right to relieve

---

[37]     Houston Refining's Complaint, Docket Entry No. 1, Ex. D, Articles of Agreement, p. 40-41.

[38]     Id. at 41.

13

employees from duties because of lack of work, are among the sole prerogatives of the Company . . . and such suspensions and discharges shall be subject to the grievance and arbitration clause of this Agreement; provided, further, this section shall not act to interfere with the Union's rights as elsewhere set forth in this Agreement.[39]

This case involves Houston Refining's exercise of its right to "discharge for good and sufficient cause." According to the language of the CBA, the Arbitrator is authorized to consider a grievance that arises under Houston Refining's application of said right. This is the essence of the agreement as it applies to this case. Houston Refining argues that, since Dimmick was terminated for excessive absences, the Arbitrator is limited to determining whether excessive absences provide a good and sufficient reason for termination. The court disagrees and finds that Houston Refining is inappropriately narrowing the issues put before the Arbitrator.

Excessive absences, or reaching the termination step of the AIP, may have provided the culminating reason for Dimmick's termination, but it would have been short-sighted of the Arbitrator to end his review there. It was the denial of Dimmick's application for FMLA leave that prompted his termination for unexcused absences under the AIP. The denial caused Dimmick to accumulate enough absences under the AIP for Houston Refining to fire him. The AIP and the FMLA are both closely connected to the reason behind Dimmick's termination. The Arbitrator's Opinion and

---

[39]   Id. at 45.

Award was at the very least "rationally inferable" from the letter and purpose of the CBA.

Moreover, Dimmick was terminated for absences, which are evaluated under Houston Refining's AIP. The AIP, then, specifically indicates that federal and medical leave is not considered an absence under the plan.[40] Houston Refining argues that the Arbitrator cannot base his decision on authority that is not specifically incorporated into the CBA. See Weber Aircraft, Inc., 253 F.3d at 824. However, the proper standard is whether the Arbitrator's decision "draws from the essence of" the CBA. Despite the fact that the CBA does not specifically mention the FMLA, as the court has already explained, the consideration of Houston Refining's application of the FMLA was drawn from the CBA's grant of authority to the Arbitrator to review the company's termination decisions.

Houston Refining also asserts that the Arbitrator exceeded his authority by recalculating Dimmick's absence points under the AIP. The court finds this argument to be unavailing. It is undisputed that the issues submitted to the Arbitrator included the "appropriate remedy" for Dimmick's absences if it was found that he was not discharged for a good and sufficient cause.[41] Accordingly,

---

[40]     Houston Refining's Complaint, Docket Entry No. 1, p. 4; Ex. B, Attendance Improvement Program, p. 2.

[41]     Houston Refining's Complaint, Docket Entry No. 1, Ex. D, Opinion and Award, p. 5.

the Arbitrator was well within his authority in determining that the appropriate remedy for Dimmick's absences was a three-day suspension and reinstatement.  The Arbitrator did not recalculate all of Dimmick's absences under the AIP.  Because he found that Houston Refining's application of the FMLA was unreasonable, the Arbitrator simply fashioned an award as if Dimmick had been granted FMLA leave.  The Arbitrator did not exceed the scope of his authority in addressing an issue that was specifically put before him by the parties.

Resolving all doubts in favor of the award, the court finds that the Arbitrator's decision in this case was within the scope of his authority under the CBA and the issues submitted by the parties.

**B.  Arbitrary and Capricious**

Houston Refining contends that, even if it is within the Arbitrator's authority to consider the FMLA in his award, his conclusions therein undermine any rational basis for Dimmick's reinstatement.  Houston Refining argues that the Arbitrator's comments regarding Dimmick's fault in this matter (i.e. that he "could have been more active in encouraging the physician's office to submit the certification form in a timely manner" and that he "must be more proactive in obtaining documentation required by the Company if he requests FMLA leave again")[42] foreclose a finding that

---

[42]     Id. at 11-12.

it was impracticable for Dimmick to submit his certification within the fifteen-day time period.  Union asserts that the Arbitrator's decision has a solid foundation in reason and fact.

Arbitrariness and capriciousness has been recognized by the Fifth Circuit as grounds for vacatur of arbitration awards arising from the terms of a CBA.  <u>Brabham</u>, 376 F.3d at 382-83.  However, the court does not find Houston Refining's arguments on this issue persuasive.  Just because the Arbitrator attributed <u>some</u> fault to Dimmick does not automatically provide Houston Refining with a good and sufficient cause for his termination.  The Arbitrator specifically indicated that Dimmick acted in good faith in making his request and following up when he found out the materials had not been submitted.[43]  He concluded that the physician's delays were "beyond [Dimmick's] control" and that even Houston Refining suffered delays when it requested documentation from Dimmick's physician.[44]

The court has already concluded that the Arbitrator's decision was rationally inferable from the CBA.  There was a rational basis for the Arbitrator's decision; therefore, the arbitration award was not arbitrary and capricious.

## C.  Manifest Disregard of the Law

An award may be vacated on the basis of "manifest disregard"

---

[43]    <u>Id.</u> at 11.

[44]    <u>Id.</u>

17

of the law only if the court finds that 1) the arbitrator's error was "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator," and 2) "the award resulted in a significant injustice." Am. Laser Vision, P.A. v. Laser Vision Inst., 487 F.3d 255, 259 (5th Cir. 2007). Additionally, the party requesting vacatur "must point to a controlling case with a clear rule ignored by the arbitrator." Apache Bohai Corp. v. Texaco China BV, 480 F.3d 397, 408-09 (5th Cir. 2007).

Houston Refining's motion argues that the Arbitrator manifestly disregarded a requirement, under 29 C.F.R. § 825.305, that it be found "impracticable" for Dimmick to deliver his medical certification to Houston Refining within fifteen days in order to warrant waiting more than said time period. Houston Refining asserts that it would suffer a significant injustice from the enforcement of the arbitration award because it would expand the company's obligations under the FMLA and undermine the bargaining relationship between Houston Refining and Union.

The court does not find Houston Refining's arguments sufficient to support vacatur under the manifest disregard standard. Arbitrators enjoy "broad leeway to fashion remedies," and the court will neither second-guess conclusions underpinning the arbitrator's award, nor will it attempt to determine if the award is free from error. See Anderman/Smith Operating Co., 918

F.2d at 1219; Am. Laser Vision, PA, 487 F.3d at 260.

Houston Refining does not show that the Arbitrator ignored a requirement that he find it was impracticable for Dimmick to provide the requested medical certification in order to justify allowing longer than fifteen days for its receipt. The Arbitrator stated that delays in the physician's submission of the forms were "beyond the control" of Dimmick.[45] He also indicated that Houston Refining incurred delays when it required Dimmick's physician submit the forms.[46] It is not a far stretch to find that, if the delays were out of Dimmick's control, then, under the circumstances, it would be impracticable to require him to submit the forms within the time frame requested by Houston Refining. The fact that the Arbitrator did not explicitly state that it was "impracticable" for Dimmick to provide the requested certification within the required time period, does not indicate that the Arbitrator ignored any such requirement. See Sarofim v. Trust Co. of the West, 440 F.3d 213, 217–18 (5th Cir. 2006) (finding that an arbitration award met the applicable law at issue despite the absence of specific terms).

Houston Refining has not made the necessary showing to avoid

---

[45]    Id.

[46]    Id.

confirmation of the arbitration award.[47]    Therefore, its claim premised on a manifest disregard of the law cannot form a basis for vacatur.

## D.  Public Policy

The Fifth Circuit permits a court to refuse to enforce an arbitration award that is contrary to public policy.  _Sarofim_, 440 F.3d at 219 (quoting _Prestige Ford v. Ford Dealer Computer Serv., Inc._, 324 F.3d 391, 396 (5th Cir. 2003)).   The Supreme Court instructs that any public policy used to vacate an arbitration award must be "explicit," "well-defined," and "dominant."   _W.R. Grace & Co. v. Rubber Workers_, 461 U.S. 757, 766 (1983); _Sarofim_, 440 F.3d at 219.   The public policy asserted must reference "laws and legal precedents" and not "general considerations of proposed public interests."  _Prestige Ford_, 324 F.3d at 396; _Misco_, 484 U.S. at 43.

Here, Houston Refining asserts that the arbitration award violates a public policy "against non-legislative expansion of the substantive rights afforded by the FMLA" by providing Dimmick: 1) the right to at least fifteen days to produce medical certification where his conduct had eliminated that right; and 2) more than fifteen days to produce the certification without finding his

---

[47]    The court does not address the second step of the "manifest disregard" analysis–whether the award would result in "significant injustice"–because that step need not be undertaken when it has been determined that the arbitrator did not manifestly act contrary to the applicable law.

ability to comply with the time restraint to be "impracticable."[48]
Houston Refining also contends that the arbitrator's failure to
find that it was impracticable for Dimmick to comply with the FMLA
document requirement violates a public policy representing "the
need to balance the job insecurity faced by workers burdened by
medical crisis and the legitimate interest of employers."[49]

In response, Union asserts that Houston Refining has not shown
an explicit, well-defined, and dominant public policy.  Union
argues that: (1) Houston Refining has not provided enough support
for the existence of a public policy; (2) that the cases provided
by Houston Refining do not address the specific FMLA provisions at
issue; and (3) the cases cited do not involve review of an
arbitrator's decision regarding a CBA.

The court finds that Houston Refining's arguments fall short
of establishing an explicit, well-defined, and dominant public
policy against expansion of Dimmick's rights under the FMLA.

Houston Refining cites to the case of Ragsdale v. Wolverine
World Wide, 535 U.S. 81, 90-91 (2002), and contends that it
provides a clear public policy against non-legislative expansion of
substantive rights under the FMLA.  Ragsdale involved an FMLA
regulation, 29 C.F.R. § 825.700(a) ("Section 825.700(a)"), that
required an employer to grant an employee twelve weeks of

---

[48]    See Houston Refining's Memorandum in Support of Motion for Summary
Judgment, Docket Entry No. 22, p. 11-12.

[49]    Id. at 11.

additional leave where the employer had not informed the employee that a certain absence would count against her FMLA entitlement. See Ragsdale, 535 U.S. at 84.  The court held that the regulation was contrary to the FMLA and beyond the Secretary of Labor's authority.  Id. at 84, 96 ("§ 825.700(a) effects an impermissible alteration of the statutory framework and cannot be within the Secretary's power to issue regulations . . . .").  The court in Ragsdale was evaluating Section 825.700(a), which is not at issue in this case.[50]  Houston Refining does not point the court to any language in Ragsdale suggesting the existence of the broad public policy against non-legislative expansion of substantive rights under the FMLA that Houston Refining proffers.  Accordingly, Houston Refining has not shown the existence of an explicit public policy.

Even if Houston Refining had made a sufficient public policy showing, its arguments pertaining to how the arbitration award violates such a public policy are also unconvincing.  First, regarding Houston Refining's argument that the Arbitrator was required to find Dimmick's ability to comply with the fifteen day deadline impracticable before Dimmick had any right to more than fifteen days to produce medical certification, the court has already explained that the Arbitrator's decision was within his authority and that his opinion that delays were beyond Dimmick's

---

[50]    Houston Refining also cites to the case of Lubke v. City of Arlington, 455 F.3d 489, 497 (5th Cir. 2006), involving Section 825.700(a).

control was equivalent to any requirement of a finding that Dimmick's compliance with the time restraint was impracticable. This reasoning also renders unavailing Houston Refining's argument that, by not finding impracticability, the arbitration award subverts Congressional public policy by creating an imbalance between worker job security and the legitimate interests of employers.

The court will next address Houston Refining's contention that the Arbitrator's award violates a policy against expansion of substantive FMLA rights by providing Dimmick the right to at least fifteen days to produce medical certification where his conduct had eliminated that right.  Houston Refining cites to the case of Boyd v. State Farm Ins. Co., 158 F.3d 326, 332 (5th Cir. 1998) in support of this argument.  The Boyd court considered the regulation under 29 C.F.R. § 825.305(b) ("Section 825.305(b)"), which provides that an employee must be allowed a minimum fifteen days to respond to an employer's written request for medical certification.  158 F.3d at 332.  The court held, as a matter of law, that "when an employee submits medical information in response to an employer's written request, 29 C.F.R. § 825.305(b) is no longer implicated and the employer is not required to wait fifteen days before taking action on the employee's request for medical leave."  Id.  Houston Refining interprets Boyd's holding to indicate that, where an employee demonstrates a need for less than the fifteen days

23

allotted under Section 825.305(a) by submitting a physician note, regardless of the adequacy of the note, the employee's substantive right to at least fifteen days ceases to exist.

In Boyd, the grievant submitted multiple physicians' notes, with no indication from the facts that the grievant's application was incomplete or that there were any procedural defects in these documents, i.e. that the certifications were not signed by the respective physicians. See id. The Boyd court merely indicated that the notes failed to support Boyd's claim that his work absence was medically necessary. Accordingly, Boyd is distinguishable from the instant case. In this case, Dimmick submitted a form which was incomplete, which is no indication that he did not need at least the full fifteen days to respond to Houston Refining's request for certification. There is no indication that the merits of Dimmick's certification forms were ever evaluated by Houston Refining within the fifteen day period. Thus, even if the court found that Houston Refining had sufficiently established a public policy against expansion of substantive rights under the FMLA, the court does not find that Dimmick's conduct eliminated his right to fifteen days to produce medical certification.

Finding Houston Refining's arguments insufficient to overcome the strong presumption in favor of confirming an arbitration award, the court cannot vacate the arbitrator's decision on the basis of any violation of public policy.

24

## IV. Conclusion

Based on the foregoing, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED.**

**SIGNED** in Houston, Texas, this 4th day of June, 2008.

Nancy K. Johnson
United States Magistrate Judge